UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PRODUCT ACTION INTERNATIONAL, LLC, successor to PRODUCT ACTION INTERNATIONAL, INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CAUSE NO. 1:05-cv-435-WTL-RLY ) |
| PLASTECH ENGINEERED PRODUCTS, INC., a/k/a PLASTECH, a/k/a PLASTECH ENGINEERED PRODUCTS, et al., | ) ) ) ) ) |
| Defendant. | ) |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Plaintiff's Motion for Summary Judgment. The motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART** the motion for the reasons set forth below.[1]

### Background

Plaintiff Product Action International, LLC ("Product Action") is a company that provides inspection, sorting and rework services, primarily for manufacturers in the automotive industry. Defendants LDM Technologies, Inc., and Plastech Engineered Products[2] are such manufacturers. Product Action entered into a series of six Terms of Service Agreements ("Agreements") with the Defendants between March 12, 2004, and October 25, 2005. In its

---

[1] In its reply brief, Product Action argues that much of an affidavit submitted by the Defendants should be stricken for various reasons. The Court does not consider that argument because Product Action is entitled to summary judgment even if the entire affidavit is considered.

[2] Plastech acquired the assets and liabilities of LDM in February 2003.

Supplemental Complaint, Product Action alleges that it performed services pursuant to the Agreements and submitted 244 invoices for its services; 114 of the invoices, totaling $321,848.66, remain unpaid. Product Action thus alleges that the Defendants have breached the Agreements and seeks the unpaid balance as well as a service charge of 18% per annum and its collection costs and expenses, including its reasonable attorney's fees, as provided for by the Agreements. The Defendants allege that the unpaid invoices were for work that they did not authorize by issuing a purchase order and therefore they were not obligated to pay for it under the Agreements.

## Applicable Standards

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." "[C]onstruction of written contracts is generally a question of law for which summary judgment is particularly appropriate." *Forty-One Assoc., LLC v. Bluefield Assoc., L.P.*, 809 N.E.2d 422, 426 (Ind. App. 2004).

> When the terms of the contract are clear and unambiguous, those terms are conclusive, and this court will not construe the contract or consider extrinsic evidence. Rather, we will simply apply the contract provisions. When interpreting a contract, a court must ascertain and effectuate the intent of the parties. The contract must be read as a whole and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. On the other hand, if the terms of a written contract are ambiguous, it is the responsibility of the trier-of-fact to ascertain the facts necessary to construe the contract. . . . [A] contract term is not ambiguous merely because the parties disagree about the term's meaning. Rather, language is ambiguous only if reasonable people could come to different conclusions about its meaning. If the contract is ambiguous or uncertain in its terms, then extrinsic circumstances and rules of contract construction may be employed to help construe the contract and ascertain the intent of the parties. Any ambiguities in a contract are to be strictly construed against the party who employed the language and who prepared the contract.

*Pinkowski v. Calumet Twp. of Lake County*, ___ N.E.2d ____, 2006 WL 2393278 at *9 (Ind. App. 2006).

## Discussion

Pursuant to the Agreements, the Defendants "authorized [Product Action] to perform services on [their] behalf" and Product Action agreed "to provide services subject to the terms and conditions" set forth in the Agreements. The Agreements further provide that "the undersigned representative of [Defendants] has authority to order the work described herein on behalf of [Defendants]" and "[t]his Terms of Service agreement between [Defendants] and Product Action shall remain in effect until canceled in writing by either party." The Defendants argue that it was their intent that Product Action would not perform any services unless they issued a separate purchase order authorizing the specific services. There is no mention of purchase orders being required in the Agreements; rather, each of the Agreements provides that it is "the complete and exclusive statement of the agreement of the parties with respect to the services authorized hereunder."

The Defendants point to no ambiguity in the language of the Agreements or uncertainty in its terms that requires looking to extrinsic evidence to interpret it. Each of the Agreements is clear that Product Action was authorized to perform its services for the Defendants until it received written notice that the Defendants wished to cancel the Agreement.[3] The evidence of

---

[3] Even if the Court considered the extrinsic evidence submitted by the Defendants, the result would not change. The Defendants have submitted evidence that it has a policy that is verbally communicated to those who provide it with goods and services, including Product Action, that a purchase order is required before any work is performed. Turton Deposition at 26. However, there is no evidence that this policy was communicated to Product Action at the time that the Agreements were entered into, and, therefore, even if the Agreements' terms were ambiguous or uncertain, there would be no evidence that would support a finding that the parties had a meeting of the minds regarding the purchase order requirement. Further, the fact that the

record indicates that written notice was provided on April 28, 2005.  Product Action is entitled to be paid pursuant to the Agreements for all work it performed prior to that date, along with the service charge and collection fees provided for in the Agreements, and the motion for summary judgment is **granted** to that extent.

All that remains is a determination of the amount that is owed to Product Action.  This should be a relatively simple mathematical computation on which the parties should be able to agree.  Accordingly, **within 30 days of the date of this Entry**, the parties shall file a stipulation regarding the appropriate amount of the judgment that should be entered in light of this ruling.[4]  If the parties are unable to agree, they shall file a notice to that effect; in that case, the Court will hold a bench trial on the issue of damages only on **Friday, November 3, 2006, at 9:30 a.m.**  The bench trial currently scheduled for November 13, 2006, is **VACATED**.

SO ORDERED:  09/06/2006

_William T. Lawrence_

Hon. William T. Lawrence, Magistrate Judge
United States District Court
Southern District of Indiana

---

Defendants paid for more than half of Product Action's invoices even though no purchase orders were issued in conjunction with them is evidence that the purchase order requirement was not part of the parties' agreement.

[4]Stipulating to the amount would not constitute an agreement by the Defendants that the entry of judgment against it is appropriate and would not waive any right to appeal the judgment when it ultimately is entered.

Copies to:

Niquelle Renee Allen
ICE MILLER LLP
niquelle.allen@icemiller.com

Alan S. Brown
LOCKE REYNOLDS LLP
abrown@locke.com

Todd Andrew Croftchik
LOCKE REYNOLDS LLP
tcroftchik@locke.com

Karla J. Elliott
PRODUCT ACTION INTERNATIONAL
kelliott@productaction.com

Myra Consetta Selby
ICE MILLER LLP
myra.selby@icemiller.com